My name is Sarah Meadows. I'm here on behalf of Dr. Baron Rosales and his family. Obviously, the original argument I intended to make has been moved or changed a little bit. This Court's order went out making sure that we looked at Molina Camacho in the following case. Would you mind speaking just a little bit more loudly? Oh, I'm sorry. It sounds loud down here. I was just saying that my original argument has changed somewhat because of the Court's order regarding the Molina Camacho case and the possible loss of jurisdiction over this case because of the BIA actually entering the order of removal that we're here to discuss today. I have spent a substantial amount of time over the last several days trying to figure out a way out of Molina Camacho. I have not been clever enough because I keep coming down to the fact that the BIA, in fact, entered the order in question, which Molina Camacho, in no uncertain terms, says the BIA cannot do. That's the end of it, isn't it? You just don't have jurisdiction, do you? I'm afraid that that might be the answer. Opposing counsel tells me he has perhaps been more clever than I and has an argument to present to you. On the jurisdiction question, I truly don't. Molina Camacho, I have not come up with anything to refute that the BIA may not enter an order of removal, which is what happened here. I can find nothing in the record that deviates or distinguishes this case adequately that I feel I could present to you with a straight face. Therefore, I've come to ask that you do indeed treat this petition as one for habeas and transfer it to the appropriate district court. But I would be happy to discuss the merits or go further on the habeas argument. Well, why don't we hear from counsel and see if he really has an ingenious solution, and then we can see whether any further discussion would be productive. Okay. Thank you, Your Honor. Thank you very much. Good morning, counsel. Good morning, Your Honor. May it please the Court, my name is Andrew McLaughlin, and I represent the Respondent Attorney General of the United States in this case. It puts me in an interesting position because if I win on the fact that you have jurisdiction, then I haven't heard, I'm not able to respond to the merits of this case. Oh, no. We'll bifurcate the argument. I'm perfectly fine either way. I can present my argument on the merits as well if you'd like, if I get you past jurisdiction. Yes, let's see if he can get us past jurisdiction. All right. What I'm suggesting to the Court is that it either limit Melina Camacho to its facts or particularly in this case distinguish Melina Camacho because of its precise holding. If you look at Melina Camacho, it was based on an assumption that a removal order had not been entered by the immigration judge. The facts of what precisely the immigration judge did are not listed directly in Melina Camacho, so you could distinguish this case factually, but my primary argument is that you should distinguish it on the law, and that is precisely what they said in Melina Camacho. After Melina Camacho's relatively long argument regarding Noriega-Lopez and whether or not the Board has the authority to enter an order in the first instance, and I'm not here to argue about that, the Court ended up in its next-to-last paragraph prior to the conclusion saying, we're not aware of any statute that tells us what a removal order entered by an immigration judge is, and the government hasn't been able to point us to one. Your Honor, I'm here to point you to that statute. In Section 101A-47A of the Immigration and Nationality Act, 8 U.S. Code 1101A-47A, Congress specifically defines order of deportation, which if that term wasn't changed when Congress stopped using the term deportation and started using removal, it didn't change that particular section of the statute. But the particular section of the statute says that an order of deportation occurs when an immigration judge enters an order and, in that order, finds removability or orders the alien removed. There's no reason for that or unless both are a removal order. It doesn't make sense unless Congress was anticipating the context in which an immigration judge would do exactly what he did here, that is, find an alien removable, and there's no question that's precisely what he did in the record. And, in fact, he goes on and says, and I'm telling you that you're going to be removed to Colombia. He specifically designates the country of removal. So it's clear that the immigration judge was intending removal in this case, found removability precisely as the statute provides. So what I'm suggesting here is based on the law, based on what Molina Camacho, in fact, tells you that it couldn't, that government didn't point it to a statute. Now that I've pointed you to the statute, you can distinguish Molina Camacho on the law or you can distinguish it on the facts because it doesn't identify the specific facts of the finding of removability below in its case. So you're saying that Molina Camacho was wrongly decided because the government didn't point to the statute it should have in that case. We pointed to it, but not for the right principle. We were talking at the time it was being argued, it was being argued on the Noriega-Lopez concept, and nobody ever got around to pointing to the court, to that language regarding the immigration judge's removal. Well, let's assume the government didn't argue it properly the last time and lost. That's right. And now we have the same issue again. Don't we – wouldn't we have to go and bank to correct that? No, Your Honor. We should just – Molina Camacho specifically says we're stuck with the fact that we think we've got a removal order here because the government hasn't pointed us to a statute. So do you think the government can come in and make its argument on an issue, and then when it loses, come back the next time and say, well, we didn't really make the right argument, here's another shot at it? It happens all the time. I'm sure. That the argument is based on – that the whole argument is based on something different, and it doesn't occur to anybody that there's an underlying issue. We thought we had the win on the first issue, and the underlying issue is still there. The fact is Congress clearly intended – I mean, states outright that this is what a I'm surprised that the court in Molina Camacho didn't notice this on its own motion, but the government should have raised it and should have discussed that point directly. But my – in the context of the Molina Camacho case, where all of the argument was focusing on whether or not the board itself had the authority to enter an order in the first instance, that argument just never came up. Can you tell me where it is? You said the next to last paragraph. Right before the conclusion, the last line of the next to last paragraph, the court says, we don't – we can't find any statute that says what a removal order is, and the government has been unable to point us to one. But they had seen the statute in question. They mentioned the same statutory section earlier in the context of the Noriega-Lopez case. So they said they can't find a statute that says what you want. They didn't notice it. That's correct. But you're saying, well, they found it, but they didn't look at it, right? They weren't looking at it on this issue. This issue was not developed before the court in Molina Camacho. It is now being developed before this Court. It was raised in the – in a motion for rehearing in Molina Camacho, but Molina Camacho became moot prior to that rehearing taking place. So we were unable to raise it in that context. Why did it become moot? The case was remanded by this Court to – it was transferred by this Court to a district court. The district court immediately vacated the order, which this Court held that it couldn't do. The district court immediately vacated the removal order and sent it back to the Board. So there was no final order of removal anymore for this Court to consider. So we were forced to concede that the rehearing argument was moot. It was not that it wasn't there. It was not that it wasn't argued. Would the Court like to hear something on the merits? Yes, I would. Yes. The merits case is actually fairly simple, Your Honor. This is a case in which the Board reversed an immigration judge. It reversed an immigration judge because his findings weren't fully supported by his own decision, and it reversed it because the facts didn't support it. The essence of the argument, the basic argument that's been made all along by the petitioners is that they're somehow part of a particular social group of health care – well, they never specify what particular social group it is that they're a member of, nor did the immigration judge identify what that particular social group was. However, the Board specifically held that health care professionals in the abstract is – How about loyal government employees? Loyal government employees has gone up and down based on different sets of facts. How about loyal government hospital employees? In this case, he quit his job as a government employee, and there's no evidence that he was harmed or harassed in any way after he quit that job. No evidence of what? I thought he was scared to death and got out of the country. As a particular social group, there is no indication that the loyal government employees are a social group at all, and that certainly wasn't argued here. Just a moment. You work for the government. Yes. You have some sense of being in a social group, and this is a particular type of government employee. They're hospital workers, perhaps you could even say high-level hospital workers, and they're loyal. Right. They won't give away the government's property to the rebels. And the more you parse it down in that way, the less cohesive and the less unique that group gets. Why? I would get some more cohesive. It's not a very large group of people who are that loyal. No, and it's not in the sense that this Court has discussed it in its previous cases, the concept of having common interests, of having these are individuals who are doing individual jobs in individual places based on individual circumstances. Sure, but that would be true of a group of government lawyers working for the immigration service. You do different jobs, but you're loyal to each other. And I would think it's the same way that people running these big hospitals in enemy territory are loyal to the government and to each other. In this case, I don't believe that you can find that there is a particular social group there. That's trying to wrap back around into the concept that there's some sort of political opinion or imputed political opinion associated with it. Well, no, it's a little different. It's not exactly a political opinion. It's a social group. Well, I mean, we haven't focused clearly enough. What is your objection to treating loyal government hospital workers as a social group? My first objection would be that it wasn't ever raised below and hasn't been discussed by the Board. The Board, in the view of this record ---- Give them a chance to discuss it. Okay. Okay? Yes, Your Honor. The context in which ---- take Sanchez Trujillo. Sanchez Trujillo was dealing with a group that has, if anything, a more cohesive identity and interest and definition than loyal government hospital workers does. We're talking about people of a fixed age who had a particular interest in either avoiding or not avoiding or persecution based on recruitment by one side or another in a civil war. And this Court was pretty specific and has been specific in all of the cases since then, citing Sanchez Trujillo, saying, look, if that's not a social group and if that's not a social group, this kind of thing hasn't been a social group either. These were just potential. These were young people or something. I don't know the case off the top of my head. Yes. Sanchez Trujillo was and has been defined by subsequent iterations through this Court as young male, military age, urban men who are politically neutral. I mean, it put all of that into the definition and said, sorry, that's still not enough to be a particular social group. That's too diverse. That doesn't cover the ground. But this Court cited Sanchez Trujillo in an unpublished case dealing with medical professionals, and other courts have cited. Okay. Well, it gives you something to measure things by, but it certainly doesn't cover our case of the loyal government hospital worker. It's a different set of facts. Yes. I mean, it is ‑‑ there are some distinctions in the facts, but as Sanchez Trujillo held and as all of the cases citing Sanchez Trujillo along those lines since that held, if that's not a particular social group, then these other kinds of things ‑‑ But how does that follow? I mean, you get a very wide group of people spread over all kinds of places and say, oh, they're not cohesive, but I would think hospital professionals, may I use professionals, hospital professionals, high level. The analysis that the board provides here is essentially right on point here. It's not fundamental to them as individuals. It is not fundamental to them as a group. It isn't a cohesive common interest. They are completely diverse. Would you entertain the lawyer analogy for a minute? You are all trained professionals. You could do different jobs, but don't you think you're a member of a social group? For example, politically. Don't you think you're a member of a social group? I am not a member of a ‑‑ as an attorney in the Department of Justice, I am not a member of a particular social group in the sense that's covered by the Immigration and Nationality Act. Are you a member of any of the rebel groups that are shooting at you? I will tell you that I am radically politically different than the people with their offices on either side of me. I will tell you that their backgrounds are totally different from mine. They didn't spend 20 years in the Marine Corps before joining Justice. All of those things are completely different. I bring all of that to my position in the Department of Justice, and other people bring the same sorts of things to their positions in the Department of Justice, and that's why simple jobs, simple occupations, vocations, isn't going to be enough. And that's what the court held in matter of ‑‑ the board held in matter of Acosta, where they were talking about a union of taxi drivers. The taxi drivers all had the same occupation. They were part of the same union in the same place doing the same thing, but that's not what we had in mind for a particular social group. One other question. The ‑‑ why is it not a reasonable, or even more than reasonable inference, when he's in a high position in a hospital and refuses to divert government resources to the rebels when they ask, and he tells them that he can't do that because of his ‑‑ he's got an obligation to the government. Why isn't it an inference that the reason for the persecution was his political opinion? Your Honor, if he had been in a private hospital and had said the exact same thing, you would not be suggesting that it's a matter of his political opinion. There is no basis for assuming that the persecutor came to him because it was a government hospital as opposed to a private hospital. If it had been a private hospital, they still would have come to him and they still would have asked for the exact same thing. The fact that he was a government employee made no difference in the motivations of the persecutor. The persecutor came to him for the reason that he was a medical professional and his role in the government had zero to do with it. There's nothing in the record that would show that the persecutors wanted anything but medical care. That might be the objective of what they want, but the question is why did they persecute him? Was it not because he had a loyalty to the government? He had a loyalty to his employer regardless of whether that was the government, Your Honor. There is no evidence in the record that reflects that it was loyalty to the government as opposed to loyalty to an employer. This is a simple case of an extortion. This is a forced recruitment like in INS v. Elias Zacharias. There isn't any difference here. All right. Thank you very much. Thank you, Your Honor. Do you have a comment on the jurisdictional issue? Do I have a comment? You don't have to if you don't have to. The way I read Malino Camacho, they had decided the issue that he's brought up at this point. They had looked at the statute. Perhaps not in exactly the tone that he's looking at, but I'm all for jurisdiction, and if you decide to go down that road, I will certainly support it, but I had not parsed that particular distinction out of the statute. As for the merits of the case, I'll respond quickly. As Your Honor pointed out, we do argue that this is a much more comprehensive social group than, say, taxi drivers or a group of young urban males of military age. We have conceded in the brief and according to the law that your social group cannot be so diverse as to sweep every alien into one. However, we feel that the BIA was perhaps a little too expansive in its definition in this particular case. The facts here are not that this was a training nurse or a random traveling surgeon. This was a very important government hospital authority, and we feel that these are the facts and that should play into how his particular social group is defined. As far as being a health care worker, perhaps you could argue that they should be grouped together on certain levels. However, if you look more closely at the facts, there's a lot here that says you should draw this narrow group of at least authorities, of people in high power, and that he happened to work for a government hospital is very important here. The rebels, as we know, are targeting the government. That is their enemy. That is their anathema, as Aguilera put it. He was in total control of this hospital. He had complete access to all of the drugs, medication, and personnel that he needed. He refused to help them. And we can argue whether that was motivated by his political alliance to the government or not, but to the rebels. Any evidence in the record that private hospitals were also targeted? In the record, there are some State Department reports that show that health care workers were targeted and that certain doctors were murdered, in fact. But in the record, if you look at the State Department report, it shows that many, many people were targeted and killed under the rebels' control, et cetera. Doctors were definitely killed, but I have nothing in the record that shows that health care workers, so to speak, were targeted. However, of course, high government officials, loyal government employees, these are not friendly people to FARC or FARC. I would also argue that ACOSTA, which groups taxi drivers and rejected that as a particular social group, as I said in the brief, with all due respect to taxi drivers, I do believe that an alliance or a group of doctors is somewhat more fundamental to their nature. This is not simply based on their job. This is based on a guiding force in their life. At least you hope that's what's behind many doctors in the profession. Doctors go through rigorous training. They have to be motivated by the desire to help and heal. This man was working in rural areas to ensure adequate health care to his people. He was a leading doctor in the community. He was a leading doctor in the government. And that is a narrow enough group to ensure protection. But as a group, leading doctors or top government officials, it's not quite clear how you would define the social group. Well, I agree that it is somewhat conflated. I would define it based on the facts of this case, that he was not only in a top position of authority, but he was in a top position of authority within a state hospital. And, therefore, you have an extra layer where perhaps it is conflated between his imputed political opinion and his social group, but he was certainly targeted because he was a top official within a hospital, that it was a government hospital also plays into it. All right. Thank you, counsel. Thank you. Was that a dismissal? Yes. Case just argued will be submitted. The next case for oral argument.
judges: Reinhardt, Noonan, Fernandez